# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

U.S. District Court
Wisconsin Eastern

JAN 21 2020

FILED
Stephen C. Dries, Clerk

In the Matter of the Search of:

See Attached Affidavit and its Exhibit and Attachments

)
)
)
)
)
)

Case No. 20 m 607

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attached Affidavit and its Exhibit 1

located in the Eastern District of Wisconsin, there is now concealed:

See Attached Affidavit and its Exhibit and Attachments

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
See Attached Affidavit and its Exhibit and Attachments

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Macchiaroli, Special Agent, HSI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 1/21/2020

_____
*Judge's signature*

City and State: Green Bay, Wisconsin

Honorable James R. Sickel, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, MATTHEW MACCHIAROLI, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, being duly sworn, deposes and states as follows:

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2510(7) of Title 18, United States Code.

## AGENT BACKGROUND

2.      I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI" or "Investigating Agency") and I am one of the law enforcement agents with primary responsibility for this investigation. I have been employed by HSI for more than 6 years. During that time, I have participated in and have received training concerning investigations of drug importation and trafficking, and have executed or participated in executing search warrants of premises, including those involving the recovery of electronic devices. I am a federal law enforcement officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure.

3.      Many of the investigations in which I have participated were national in scope, and required me to work closely, and to share information and intelligence, with members of other law enforcement agencies, including the New York City Police Department ("NYPD"), United States Postal Investigation Service ("USPIS"), and the United States Attorney's Office for the Southern District of New York.

4.     As a Special Agent, I have used various investigatory tools and techniques, including confidential informants, cooperating witnesses, undercover agents, physical surveillance, search warrants, telephone toll analysis, court-authorized electronic surveillance, grand jury investigations, and witness interviews. I am familiar with the benefits and limitations of these techniques. I have also participated in the execution of search warrants resulting in the seizure of controlled substances and related paraphernalia and materials, both physical and electronic; United States currency; records of monetary transactions; and computers, cell phones, and other electronic devices used in the conduct of conspiracies to unlawfully import and distribute controlled substances and controlled substance analogues.

5.     I am one of the case agents for this investigation and have worked closely with other law enforcement personnel in investigating this case. Accordingly, I am familiar with the facts concerning this investigation.

**PURPOSE OF THE AFFIDAVIT**

6.     On or about January 6, 2020, a grand jury sitting in the Southern District of New York returned Indictment 20 Cr. 13 (the "Indictment"), filed under seal, charging TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE with one count of conspiracy to distribute controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Sections 813, 841, 846 and one count of conspiracy to unlawfully import controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Sections 813, 952, 960, and 963.

7.     I submit this affidavit in support of applications for the issuance of a search warrant pursuant to Fed. R. Crim. P. 41, authorizing the search of 432 North Splake Court, Peshtigo,

2

Wisconsin 54157 (the "Target Premises"), as described and depicted in the photographs set forth in Attachment A.

        8.     The Target Persons are described as follows:

        a.     TRACY SHELDON, born 1979, Social Security number -7205, is a 5 foot 5 inch Caucasian female with brown hair and blue eyes.

        b.     CHAD ZESKE, born 1978, Social Security number -6283, is a Caucasian male.

## FACTS ESTABLISHING PROBABLE CAUSE

### *The Subject Offenses*

        9.     For the reasons detailed below, I believe that there is probable cause to believe that the Target Premises contain evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 (unlawful distribution and possession with intent to distribute controlled substances and controlled substance analogues), 846 (conspiracy to unlawfully distribute and possess with intent to distribute controlled substance analogues, and to unlawfully import from outside the United States controlled substances and controlled substance analogues), and 952 (unlawful importation of controlled substances and controlled substance analogues), from in or about 2013 until in or about 2019 (the "Subject Offenses"). In addition, there is probable cause to believe that Target Premises-1 contains the Target Persons, who are persons to be arrested pursuant to Federal Rule of Criminal Procedure 41(c)(4).

### *Probable Cause Regarding the Target Persons' Commission of the Subject Offenses*

        10.    As stated above, on January 6, 2020, a grand jury sitting in the Southern District of New York returned an Indictment charging SHELDON and ZESKE with one count of conspiracy to distribute controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Sections 813, 841, 846 and one count of conspiracy to unlawfully import

3

2017.08.02

controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Sections 813, 952, 960, and 963. A copy of the Indictment is attached hereto as Exhibit 1 and is incorporated by reference as if fully set forth herein.

11. As set forth in the Indictment:

a. From at least in or about 2013, up to and including in or about 2019, SHELDON and ZESKE operated a scheme to import synthetic cannabinoids from China and then use them to manufacture and distribute massive wholesale quantities of smokeable synthetic cannabinoids ("SSC"), containing controlled substances and controlled substance analogues, throughout the United States.

b. SHELDON and ZESKE operated an unlawful, covert drug distribution business that imported synthetic cannabinoids from China and sold wholesale quantities of SSC, colloquially referred to as "K2" or "Spice," which included dried, shredded plant material onto which the imported synthetic cannabinoid chemicals had been sprayed, and liquids containing synthetic cannabinoid chemicals for users to vaporize and inhale with e-cigarettes or other similar devices. Packages of SSC were shipped through the United States mail and other carriers to retail dealers of SSC throughout the United States, including online sellers. Some of the SSC distributed by the scheme were branded with colorful graphics and distinctive names, including "Scooby Snax," "Monkey Funky," "Scorpion King," "Hawaiian Bliss," "Blackout," "El Diablo," "Dead Man," "Mind Trip," and "Evil." The branded SSC were sometimes marked "not for human consumption," or "potpourri." Other of the SSC was distributed in bulk quantities. SHELDON and ZESKE operated this business, in part, using stores they owned in Wisconsin and Michigan that purported to be legal "smoke shops"

4

2017.08.02

c.      SSC, which can be addictive, are often marketed as safe, legal alternatives to marijuana.  In fact, SSC are not safe and may affect the brain much more powerfully than marijuana; their actual effects can be unpredictable and, in some cases, more dangerous or even life-threatening.

d.      In or about January 2018, a minor purchased SSC from one of the defendants' "smoke shops" and, while attending high school, suffered an acute medical episode following use of the SSC, including severe vomiting, loss of consciousness, and difficulty breathing.    Shortly thereafter, SHELDON informed a co-conspirator who is currently a cooperating witness ("CW-1")[1] by text message that she did not need additional supply of "bottles for a bit" because she "had some younger kids get there [sic] hand on them" and "have [a] bad result," which she described as a "seizure," so she was "really limiting her sales for a bit," though she would "take them if [CW-1] made them" already.  SHELDON further told CW-1 by text message that she is "very selective with who gets those," but that, in light of the "seizure," she was going to "cut almost everyone off for a bit."  When CW-1 asked if she was concerned about law enforcement scrutiny, SHELDON responded, "No, I talked to some people [and] don't think [the minor victim] said anything but just in case I'm keeping it on the very down low."

e.      ZESKE, among other things, communicated with CW-1 by text message in furtherance of wholesale SSC transactions, sent payments to CW-1 to execute those transactions, and orchestrated retail sales of SSC working together with SHELDON.

---

[1] CW-1 was charged in the Southern District of New York with several counts of conspiring to distribute and import controlled substances and controlled substance analogues.  CW-1 has pleaded guilty to a superseding indictment charging him with those crimes as well as wire fraud.  CW-1 is currently detained and has entered into a cooperation agreement with the Government in the hopes of obtaining leniency at sentencing.  CW-1 has been deemed credible, and information provided by CW-1 has been corroborated by, among other things, text messages and other electronic evidence recovered and obtained by law enforcement.

2017.08.02

f.     SSC sold and imported by SHELDON and ZESKE contained Schedule I controlled substances and/or analogues of Schedule I controlled substances, which are treated as Schedule I controlled substances.

12.     On or about January 6, 2020, the Honorable Debra Freeman, United States Magistrate Judge for the Southern District of New York, issued arrest warrants for SHELDON and ZESKE based on the charges contained in the Indictment. SHELDON and ZESKE have not yet been apprehended. Law enforcement agents intend to apprehend SHELDON and ZESKE, who are believed to reside at the Target Premises at the time of the execution of the search warrant requested herein.

13.     Based on my participation in this investigation, including my conversations with other law enforcement agents and CW-1, my review of law enforcement reports, and my review of communications between CW-1 and SHELDON and ZESKE, I have learned, among other things, that SHELDON and ZESKE have used several forms of payment in furtherance of their involvement in importing and distributing SSC, including wire transfers, Western Union payments, cash, and prepaid credit cards.

*Probable Cause Justifying Search of the Target Premises*

14.     Based on my review of documents and involvement in this investigation, I have learned that the address for the Target Premises has been provided as a shipping address to China-based SSC manufacturers. Specifically, among other incidents, on or about June 7, 2018, SHELDON's contact information and the Target Premises was provided as a shipping address to an SSC manufacturer. In addition, on or about May 23, 2018 and on or about January 26, 2019, packages were shipped from China to ZESKE at the Target Premises. These shipments were either closely preceded or followed by wire transfers made by SHELDON to China-based accounts.

6

15. Based on my training, experience, and participation in this investigation, individuals who commit crimes like the Subject Offenses and participate in conduct like the drug importation and distribution conspiracy alleged in the Indictment often store ledgers and other business records, cellphones, computers, and other items used in furtherance of their criminal activities in their residences.

The Target Premises

16. Based on my review of law enforcement databases, I have learned among other things, the following:

      a.      In a complaint filed with the City of Peshtigo Police Department, on or about October 13, 2018, SHELDON self-reported her address as the Target Premises.

      b.      In a complaint filed with the City of Peshtigo Police Department, on or about May 26, 2019, SHELDON self-reported her address as the Target Premises.

      c.      On or about January 4, 2019, ZESKE was pulled over in the City of Marinetee in a vehicle registered to the Target Premises.

17. Based on my communications with law enforcement officers and involvement in this investigation, I have learned that vehicles registered to ZESKE and SHELDON have been observed parked at the Target Premises. On or about January 16, 2020, both SHELDON and ZESKE were observed at the residence.

18. Based on my conversations with law enforcement officers and CW-1, my involvement in this investigation, and review of records and documents, I understand that ZESKE and SHELDON are married.

**SEIZURE OF COMPUTER EQUIPMENT AND DATA**

7

19.     Based on my training and experience, I know that individuals who sell narcotics over the internet and engage in narcotics trafficking conspiracies commonly use cellphones and computers to, among other things, access websites used for illegal activity; communicate with co-conspirators and customers online; keep track of co-conspirators' and customers' contact information; and keep a record of illegal transactions or criminal proceeds for future reference. As a result, they often store data on their cellphones and computers related to their illegal activity, which can include logs of online "chats" with co-conspirators and customers; email correspondence with co-conspirators and customers; contact information of co-conspirators and customers, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts; payment and other personally identifiable information for customers, including bank account numbers, credit card numbers, and names, addresses, and telephone numbers; and/or records of illegal transactions or the disposition of criminal proceeds.

20.     Based on my training and experience, I also know that, where computers are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred. This is typically true because:

- Electronic files can be stored on a hard drive for years at little or no cost and users thus have little incentive to delete data that may be useful to consult in the future.

- Even when a user does choose to delete data, the data can often be recovered months or years later with the appropriate forensic tools. When a file is "deleted" on a home computer, the data contained in the file does not actually disappear, but instead remains on the hard drive, in "slack space," until it is overwritten by new data that cannot be stored elsewhere on the computer. Similarly, files that have been viewed on the Internet are generally downloaded into a temporary Internet directory or "cache," which is only overwritten as the "cache" fills up and is replaced with more recently viewed Internet pages. Thus, the ability to retrieve from a hard drive or other electronic storage media depends less on when the file was created or viewed than on a particular user's operating system, storage capacity, and computer habits.

- In the event that a user changes computers, the user will typically transfer files from the old computer to the new computer, so as not to lose data. In addition, users often

8

keep backups of their data on electronic storage media such as thumb drives, flash memory cards, CD-ROMs, or portable hard drives.

21.    In addition to there being probable cause to believe that cellphones and computer devices will be found on the Target Premises that contain evidence of the Subject Offenses, there is also probable cause to believe that these cellphones and computers constitute instrumentalities of the Subject Offenses because SHELDON and ZESKE are engaged in a scheme to import and distribute controlled substances and controlled substance analogues in furtherance of which they appear to use computers and cellphones to communicate with co-conspirators and/or customers by email and text messaging, as described above (*see* ¶ 11(d)).

22.    Based on the foregoing, I respectfully submit there is probable cause to believe that SHELDON, ZESKE, and their co-conspirators and/or customers are engaged in a drug importation and distribution conspiracy, and that evidence of this criminal activity is likely to be found in the Target Premises and on cellphones, computers, and other electronic media found in the Target Premises.

## **PROCEDURES FOR SEARCHING ELECTRONICALLY STORED INFORMATION**

*Execution of Warrant for Electronically Stored Information ("ESI")*

23.    Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review." Consistent with Rule 41, this application requests authorization to seize any cellphones, computer devices, and storage media and transport them to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on cellphones and computer devices and storage media is often impractical for law enforcement personnel to review in its entirety at the search location.

9

2017.08.02

- Second, because cellphones and computer data is particularly vulnerable to inadvertent or intentional modification or destruction, cellphones and computer devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of cellphones and computer hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying data.

- Fourth, many factors can complicate and prolong recovery of data from a cellphone or computer device, including the increasingly common use of passwords, encryption, or other features or configurations designed to protect or conceal data on the device, which often take considerable time and resources for forensic personnel to detect and resolve.

*Review of ESI*

24. Following seizure of any cellphones, computer devices, and storage media and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrants that was created or modified between January 1, 2013 and the date of the execution of the warrants.

25. In conducting this review, law enforcement personnel may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses. Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

10

- "scanning" storage areas to discover and possibly recover recently deleted data or deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of data potentially related to the subject matter of the investigation[2]; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone or computer was used.

26.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrants.  Depending on the circumstances, however, law enforcement personnel may need to conduct a complete review of all the ESI from seized devices or storage media to evaluate its contents and to locate all data responsive to the warrants.

## A.  Return of ESI

27.     If the Government determines that the electronic devices are no longer necessary to retrieve and preserve the data, and the devices themselves are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return these items, upon request. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

---

[2] Keyword searches alone are typically inadequate to detect all relevant data.  For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text.  Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.

11

## CONCLUSION

28.     Based on the foregoing, I have probable cause to believe that evidence, fruits, and instrumentalities of the crimes described above, as described in Attachment B are contained within the Target Premises, as more particularly described in Attachment A.

29.     In light of the confidential nature of the continuing investigation, and the fact that the Superseding Indictment is presently sealed, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise.

I, Matthew Macchiaoli, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

_____
MATTHEW MACCHIAROLI
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before
me this 21st day of January, 2020.

_____
JAMES R. SICKEL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF WISCONSIN

12

2017.08.02

# ATTACHMENT A

## I. Premises to be Searched—the Target Premises

The premises to be searched ("Target Premises") are particular described as follows, and include all locked and closed containers found therein: the northern unit in a two-unit duplex numbered 432 North Splake Court, located on the east side of North Splake Court north of Oak Street, in Peshtigo, Wisconsin, as depicted in the following photographs:





2017.08.02

## ATTACHMENT B

### I. Items to Be Seized

#### A. Evidence, Fruits, and Instrumentalities of the Subject Offenses

The items to be seized from the Target Premises consist of the following evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 (unlawful distribution and possession with intent to distribute controlled substances and controlled substance analogues), 846 (conspiracy to unlawfully distribute and possess with intent to distribute controlled substance analogues, and to unlawfully import from outside the United States controlled substances and controlled substance analogues), and 952 (unlawful importation of controlled substances and controlled substance analogues), from in or about 2013 until in or about 2019 (the "Subject Offenses") described as follows:

1. Evidence concerning occupancy or ownership of the Target Premises, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys.

2. Evidence concerning the unlawful purchase, sale, ownership, or possession of controlled substances or controlled substance analogues, including without limitation, including controlled substances and analogues of controlled substances, related paraphernalia such as scales, and books, records, receipts, notes, ledgers, and other papers or documents associated with the unlawful purchase or sale of controlled substances and analogues of controlled substances.

3. Evidence concerning the shipment and receipt of narcotics through the United States mail and other parcel services, including boxes, envelopes, labels, label printers, postage stamps, packaging tape, and other materials that may be used for packaging and shipping controlled substances and analogues of controlled substances.

4. Proceeds from the illegal sale of controlled substances and analogues of controlled substances, including United States currency, prepaid credit or debit cards, cryptocurrency, precious metals, jewelry, and financial instruments, including money orders, certificates of deposit, and stocks and bonds.

5. Evidence of the transfer or disposition of the proceeds of unlawful sale of controlled substances and analogues of controlled substances, including bank statements and wire transfer records, and receipts for items or services that may have been purchased with the proceeds of the unlawful sale of controlled substances and analogues of controlled substances.

6. Evidence concerning the identity or location of, and communications with, co-conspirators and customers, including without limitation documents or records reflecting the identities of or communications with potential purchasers and/or sellers of controlled substances and analogues of controlled substances.

2

7.     Any safes, key-lock strong boxes, suitcases, containers, traps, and other boxes or instruments secured by combination and/or key locks of various kinds that may contain the items described herein.

## B. Search and Seizure of Electronically Stored Information

The items to be seized from the Target Premises also include any cellphones, computer devices, and storage media that may contain any electronically stored information falling within the categories set forth in Section I.A of this Attachment above, including, but not limited to, desktop and laptop computers, disk drives, modems, thumb drives, personal digital assistants, smart phones, digital cameras, and scanners. In lieu of seizing any such cellphones, computer devices, or storage media, this warrant also authorizes the copying of such devices or media for later review.

The items to be seized from the Target Premises also include:

1.     Any items or records needed to access the data stored on any seized or copied cellphones, computer devices, or storage media, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2.     Any items or records that may facilitate a forensic examination of the cellphones, computer devices, or storage media, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3.     Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied cellphones, computer devices, or storage media.

## C. Review of ESI

Following seizure of any cellphones, computer devices, and storage media and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant that was created or modified between January 1, 2013 and the date of the execution of the warrants.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

3

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the device was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Sections I.A and I.B of this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

If the Government determines that any devices seized are no longer necessary to retrieve and preserve the data on the device, and that the devices are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the devices, upon request.

4

# EXHIBIT 1

2017.08.02

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -  :

UNITED STATES OF AMERICA                        :

      - v. -                                   :       **SEALED INDICTMENT**

                                                 :       20 Cr.

TRACY SHELDON,                                   :
     a/k/a "Tracy Zeske," and                   :
CHAD ZESKE,                                      :

                Defendants.              :

20 CRIM 013

- - - - - - - - - - - - - - - - - -

### COUNT ONE
(Conspiracy to Unlawfully Distribute Controlled Substances and
Controlled Substance Analogues)

      The Grand Jury charges:

THE SYNTHETIC CANNABINOIDS DISTRIBUTION SCHEME

      1.     From at least in or about 2013, up to and
including in or about 2019, in the Southern District of New York
and elsewhere, TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD
ZESKE, the defendants, operated and participated in a scheme to
distribute massive wholesale and retail quantities of smokeable
synthetic cannabinoids ("SSC"), containing controlled substances
and controlled substance analogues, throughout the United
States.  SHELDON and ZESKE also participated in the importation
of synthetic cannabinoids from China to supply the SSC
distribution scheme.

2.    TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, operated an unlawful, covert drug distribution business that imported synthetic cannabinoids from China, including through the Southern District of New York, and sold wholesale and retail quantities of SSC, colloquially referred to as "K2" or "Spice," which included dried, shredded plant material onto which the imported synthetic cannabinoid chemicals had been sprayed, and liquids containing synthetic cannabinoid chemicals for users to vaporize and inhale with e-cigarettes or other similar devices.  The defendants used stores purporting to be legal "smoke shops" in Michigan and Wisconsin to clandestinely sell SSC, some of which was branded with colorful graphics and distinctive names, including "Scooby Snax," "Monkey Funky," "Scorpion King," "Hawaiian Bliss," "Blackout," "El Diablo," "Dead Man," "Mind Trip," and "Evil." The branded SSC were sometimes misleadingly marked "not for human consumption," "potpourri," or "incense."  The defendants also distributed synthetic cannabinoids they imported from China to other manufacturers and distributors located elsewhere in the United States.

3.    In or about January 2018, a minor purchased SSC from one of the defendants' "smoke shops" and, while attending high school, suffered an acute medical episode following use of

2

the SSC, including severe vomiting, loss of consciousness, and difficulty breathing. Shortly thereafter, TRACY SHELDON, a/k/a "Tracy Zeske," the defendant, informed a co-conspirator not named herein ("CC-1") by text message that she did not need additional supply of "bottles for a bit" because she "had some younger kids get there [*sic*] hands on them" and "have [a] bad result," which she described as a "seizure," so she was "really limiting her sales for a bit," though she would "take them if [CC-1] made them" already. SHELDON further told CC-1 by text message that she is "very selective with who gets those," but that, in light of the "seizure," she was going to "cut almost everyone off for a bit." When CC-1 asked if she was concerned about law enforcement scrutiny, SHELDON responded, "No I talked to some people [and] don't think [the minor victim] said anything but just in case I'm keeping it on the very down low."

4. CHAD ZESKE, the defendant, among other things, communicated with CC-1 in furtherance of wholesale SSC transactions, sent payments to CC-1 to execute those transactions, and orchestrated retail sales of SSC working together with TRACY SHELDON, a/k/a "Tracy Zeske," the defendant.

5. SSC, which can be addictive, are often marketed as safe, legal alternatives to marijuana. In fact, SSC are not safe and may affect the brain much more powerfully than

3

marijuana; their actual effects can be unpredictable and, in some cases, more dangerous or even life-threatening.

## STATUTORY ALLEGATIONS

6. From at least in or about 2013, up to and including in or about 2019, in the Southern District of New York and elsewhere, TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the controlled substance laws of the United States.

7. It was a part and an object of the conspiracy that TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Section 841(a)(1).

8. The controlled substance that TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, conspired to distribute and possess with intent to distribute, was, from on or about December 28, 2018, until in or about 2019, mixtures and substances containing a detectable amount of N-[[1-(5-fluoropentyl)-1H-indol-3-yl]carbonyl]-3-methyl-L-valine, methyl ester (known as "5F-MDMB-PICA," "MDMB-2201," and "5-flouro-MDMB-

4

2201"), in violation of Title 21, United States Code, Section 841(b)(1)(C).

9.    The controlled substance analogues that TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, conspired to distribute and possess with intent to distribute, were: (i) from in or about January 2013, until on or about May 16, 2013, mixtures and substances containing a detectable amount of [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethyl cyclopropyl)methanone (known as "XLR-11," "XLR11," and "F-Fluoro-UR-144"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of 1-naphthalenyl(1-pentyl-1H-indol-3-yl)-methanone (known as "JWH-018" and "AM678"), that was intended for human consumption and is treated as a controlled substance in Schedule I of the Controlled Substances Act, in violation of Title 21, United States Code, Sections 813 and 841(b)(1)(C); (ii) from on or about February 10, 2014, until in or about 2019, mixtures and substances containing a detectable amount of methyl (2S)-2-(1-(4-fluoropentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate (known as "4F-ADB" and "4-fluoro MDMB-PINACA"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of N-[[1-(5-fluoropentyl)-1H-indazol-3-yl]carbonyl]-L-valine, methyl ester

5

(known as "5F-AMB," "5-fluoro AMB," and "5-fluoro MMB-PINACA"),
that was intended for human consumption and is treated as a
controlled substance in Schedule I of the Controlled Substances
Act, in violation of Title 21, United States Code, Sections 813
and 841(b)(1)(C); and (iii) from on or about April 10, 2017,
until on or about December 28, 2018, mixtures and substances
containing a detectable amount of N-[[1-(5-fluoropentyl)-1H-
indol-3-yl]carbonyl]-3-methyl-L-valine, methyl ester (known as
"5F-MDMB-PICA," "MDMB-2201," and "5-flouro-MDMB-2201"), a
controlled substance analogue, as defined in Title 21, United
States Code, Section 802(32), of methyl 2-(1-(5-fluoropentyl)-
1H-indazole-3-carboxamido)-3,3-dimethylbutanoate) (known as
"5F-ADB" and "5F-MDMB-PINACA"), that was intended for human
consumption and is treated as a controlled substance in Schedule
I of the Controlled Substances Act, in violation of Title 21,
United States Code, Sections 813 and 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

### COUNT TWO
(Conspiracy to Unlawfully Import Controlled Substances and
Controlled Substance Analogues)

The Grand Jury further charges:

10. The allegations set forth in Paragraphs 1
through 5 above are repeated and re-alleged as if set forth
fully herein.

6

11.    From at least in or about 2013, up to and
including in or about 2019, in the Southern District of New York
and elsewhere, TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD
ZESKE, the defendants, and others known and unknown,
intentionally and knowingly did combine, conspire, confederate,
and agree together and with each other to violate the controlled
substance laws of the United States.

12.    It was a part and an object of the conspiracy
that TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the
defendants, and others known and unknown, would and did import
into the United States and into the customs territory of the
United States from a place outside thereof controlled substances
and controlled substance analogues, in violation of Title 21,
United States Code, Sections 952(a) and 960(a)(1).

13.    The controlled substance that TRACY SHELDON,
a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, conspired
to import into the United States and into the customs territory
of the United States from a place outside thereof, was, from on
or about December 28, 2018, until in or about 2019, mixtures and
substances containing a detectable amount of N-[[1-(5-
fluoropentyl)-1H-indol-3-yl]carbonyl]-3-methyl-L-valine, methyl
ester (known as "5F-MDMB-PICA," "MDMB-2201," and "5-flouro-MDMB-

7

2201"), in violation of Title 21, United States Code, Section 960(b)(3).

14. The controlled substance analogues that TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, conspired to import into the United States and into the customs territory of the United States from a place outside thereof, were: (i) from in or about January 2013, until on or about May 16, 2013, mixtures and substances containing a detectable amount of [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethyl cyclopropyl)methanone (known as "XLR-11," "XLR11," and "F-Fluoro-UR-144"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of 1-naphthalenyl(1-pentyl-1H-indol-3-yl)-methanone (known as "JWH-018" and "AM678"), that was intended for human consumption and is treated as a controlled substance in Schedule I of the Controlled Substances Act, in violation of Title 21, United States Code, Sections 813 and 960(b)(3); (ii) from on or about February 10, 2014, until in or about 2019, mixtures and substances containing a detectable amount of methyl (2S)-2-(1-(4-fluoropentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate (known as "4F-ADB" and "4-fluoro MDMB-PINACA"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of N-[[1-(5-

8

fluoropentyl)-1H-indazol-3-yl]carbonyl]-L-valine, methyl ester (known as "5F-AMB," "5-fluoro AMB," and "5-fluoro MMB-PINACA"), that was intended for human consumption and is treated as a controlled substance in Schedule I of the Controlled Substances Act, in violation of Title 21, United States Code, Sections 813 and 960(b)(3); and (iii) from on or about April 10, 2017, until on or about December 28, 2018, mixtures and substances containing a detectable amount of N-[[1-(5-fluoropentyl)-1H-indol-3-yl]carbonyl]-3-methyl-L-valine, methyl ester (known as "5F-MDMB-PICA," "MDMB-2201," and "5-flouro-MDMB-2201"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate) (known as "5F-ADB" and "5F-MDMB-PINACA"), that was intended for human consumption and is treated as a controlled substance in Schedule I of the Controlled Substances Act, in violation of Title 21, United States Code, Sections 813 and 960(b)(3).

(Title 21, United States Code, Sections 813, 952(a), 960(a), 960(b)(3), and 963.)

### FORFEITURE ALLEGATION

15. As a result of committing the controlled substance offenses alleged in Counts One and Two of this Indictment, TRACY SHELDON, a/k/a "Tracy Zeske," and CHAD ZESKE, the defendants, shall forfeit to the United States, pursuant to

9

Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offenses and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

16. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

10

other property of the defendants up to the value of the above

forfeitable property.

(Title 21, United States Code, Section 853.)

_____
Foreperson

Geoffy S. Berm
_____
GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

TRACY SHELDON,
a/k/a "Tracy Zeske," and
CHAD ZESKE,

Defendants.

### SEALED INDICTMENT

20 Cr. ___

(21 U.S.C. §§ 813, 841(b)(1)(C), 846,
952(a), 960(a), 960(b)(3), and 963.)

GEOFFREY S. BERMAN
United States Attorney.

Foreperson

# UNITED STATES DISTRICT COURT

for the

## Southern District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Tracy Sheldon, | )   Case No.   20 Cr. |
| a/k/a "Tracy Zeske," | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant* | |

**20 CRIM 013**

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Tracy Sheldon, a/k/a "Tracy Zeske"                               ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. 846 (conspiracy to distribute controlled substances and controlled substance analogues); 21 U.S.C. 963 (conspiracy to import controlled substances and controlled substance analogues)

Date:    01/06/2020                              _____
                                                                    *Issuing officer's signature*

City and state:    New York, New York               Hon. Debra Freeman, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____    _____ <br> *Arresting officer's signature* <br><br> _____ <br> *Printed name and title* |

# UNITED STATES DISTRICT COURT

for the

## Southern District of New York

United States of America
v. ·
Chad Zeske,

)
)
)
)
)
)

Case No.   20 Cr.

2̶0̶ ̶C̶R̶I̶M̶ ̶0̶1̶3̶

_____
*Defendant*

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Chad Zeske
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. 846 (conspiracy to distribute controlled substances and controlled substance analogues); 21 U.S.C. 963
(conspiracy to import controlled substances and controlled substance analogues)

Date:   01/06/2020

City and state:   New York, New York

s/ Debra Free
*Issuing officer's signature*

Hon. Debra Freeman, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____       _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |